991 F.2d 116
 24 Bankr.Ct.Dec. 259, Bankr. L. Rep. P 75,242
 In re MEMBERS WAREHOUSE, INCORPORATED, d/b/a Moneysworth
Warehouse, Incorporated, Debtor.
W. Joseph BURNS, Trustee in Bankruptcy for Members
Warehouse, Incorporated, Plaintiff-Appellee,
v.
CITY OF WINSTON-SALEM; County of Forsyth; Forsyth County &
City of Winston-Salem Tax Collector,
Defendants-Appellants.
In re MEMBERS WAREHOUSE, INCORPORATED, d/b/a Moneysworth
Warehouse, Incorporated, Debtor.
W. Joseph BURNS, Trustee in Bankruptcy for Members
Warehouse, Incorporated, Plaintiff-Appellee,
v.
CITY OF FAYETTEVILLE; County of Cumberland; Cumberland
County & City of Fayetteville Tax Collector,
Defendants-Appellants.
 Nos. 91-1262, 91-1883.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 1, 1993.
Decided April 19, 1993.
 
 Davida Wagner Martin, Garris Neil Yarborough, Paul Allen Sinal, Office of the Forsyth County Atty., Winston-Salem, NC, argued, for defendants-appellants.
 Robert Edmunds Price, Jr., William Joseph Burns, Burns & Price, Winston-Salem, NC, argued, for plaintiffs-appellees.
 Before LUTTIG, Circuit Judge, MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This matter comes before this court on appeal from a decision of the United States District Court for the Middle District of North Carolina. In its decision, the district court affirmed an order of the bankruptcy court directing that the Forsyth County-City of Winston-Salem and Cumberland County-City of Fayetteville Tax Collectors (the "Tax Collectors") return to the bankruptcy trustee property taxes prepaid by the debtor. The court also denied the Tax Collectors' motion to collect property taxes for the fiscal year July 1, 1987 to June 30, 1988.
 
 
 2
 Upon de novo review of the law applicable to the facts presented in this case, we find that the district court erred in affirming the decision of the bankruptcy court. Accordingly, we reverse.
 
 I.
 
 3
 The controversy in this case involves the Tax Collectors and the bankruptcy trustee for Members Warehouse, Inc. ("Members Warehouse" or "debtor"). On January 30, 1987, Members Warehouse, a membership warehouse with operations located in Winston-Salem and Fayetteville, North Carolina, listed its business personal property in each of the taxing jurisdictions for the purpose of taxation, as provided by the General Statutes of North Carolina. See N.C.Gen.Stat. § 105-285 (1992). The listing was effective as of January 1, 1987.
 
 
 4
 On or about March 6, 1987, the Forsyth County-Winston-Salem Tax Collector's office learned from the debtor that the debtor was planning to go out of business and thereupon informed Members Warehouse of the provisions of section 105-366(c) of the General Statutes of North Carolina which provides that if the tax collector has "reasonable grounds for believing that the taxpayer is about to remove his property from the taxing unit or transfer it to another person or is in imminent danger of becoming insolvent," the tax collector may move immediately to levy on or attach the property. N.C.Gen.Stat. § 105-366(c). In fact, on March 6, 1987, the Forsyth County-Winston-Salem taxing authority initiated such a process against the debtor.
 
 
 5
 On March 11, 1987, Members Warehouse voluntarily prepaid the estimated ad valorem property taxes for the fiscal year 1987 in the amount of $26,027.28 to the Forsyth County-Winston-Salem Tax Collector and the attachment was released. The amount demanded by the Cumberland County-Fayetteville Tax Collector, $31,436.31, was attached by that Collector. The amounts demanded were based on the 1986 tax rates.
 
 
 6
 On March 12, 1987, an involuntary petition in bankruptcy was filed against the debtor corporation. The bankruptcy court appointed W. Joseph Burns ("Burns") as trustee of the estate. On March 24, 1987, an Order for Relief was entered under Chapter 7. By May, 1987, the trustee had liquidated all of the personal property in the estate.
 
 
 7
 On July 1, 1987, the tax rates for Forsyth County-Winston-Salem and Cumberland County-Fayetteville were duly adopted by the respective jurisdictions for the 1987 tax year. These rates were slightly higher than the 1986 tax rates, leaving small balances due on the debtor's accounts. According to the record these balances were paid.
 
 
 8
 In March of 1989, the trustee in bankruptcy instituted an adversary proceeding to avoid the taxes, claiming that such payment was a transfer for which no value was given and that no value accrued to Members Warehouse or to the estate from the transfer. The bankruptcy court granted the trustee's motion for summary judgment, finding that the personal property tax constituted a payment for services to be rendered in the coming year which would not be rendered because of the insolvency of Members Warehouse. Accordingly, the court avoided the transfer and ordered the two Tax Collectors to refund the prepaid taxes. The district court affirmed the bankruptcy court's order, and the Tax Collectors appealed the decision to this court.[1]
 
 II.
 
 9
 The central issue in this controversy involves the determination of when Members Warehouse incurred liability for the property taxes. If the tax was incurred on January 1, 1987, the date the property was listed, Members Warehouse's tax liability would have attached at that time, and there would be no right to a refund. If, on the other hand, the tax was incurred on July 1, 1987, the date the tax rate was set, Members Warehouse's tax liability would not have arisen until that date, four months after the petition in bankruptcy was filed and two months after the trustee had liquidated all of the debtor's personal property. In such case, the debtor would not be liable for the payment of taxes and is entitled to a refund.
 
 
 10
 The Bankruptcy Code is silent as to when precisely a tax obligation is "incurred." In determining when this ad valorem property tax is incurred, the court must refer to the law of North Carolina in which state the tax is being assessed. See Arkansas Corp. Comm'n v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941). Although the General Statutes of North Carolina do not state specifically when a tax is incurred, the statutes do provide that "[a]ll property subject to ad valorem taxation shall be listed annually.... [T]he value, ownership, and place of taxation of personal property, both tangible and intangible, shall be determined annually as of January 1." N.C.Gen.Stat. § 105-285. It is this act of "listing" which courts have determined is the critical date.
 
 
 11
 The Supreme Court of North Carolina has proclaimed that
 
 
 12
 [t]he tax on property is a visitational tax, and is the taking of a part of the taxpayer's wealth, represented by the property he owns, for the needs of Government.... [I]t is taken as a percentage of the ascertained value "according to ownership", as of the day of visitation [now January 1st].
 
 
 13
 Logically, therefore, the liability for the tax arises on the day the lien attaches to the property, and on the day the taxpayer is found to be in ownership thereof [now January 1st].
 
 
 14
 Bemis Hardwood Lumber Co. v. Graham County, 214 N.C. 167, 198 S.E. 843, 845 (1938). Although the Bemis case involved taxes on real estate, the principles of taxation stated above should also apply to the taxation of personal property. The General Statutes of North Carolina provide that "the lien for taxes levied on personal property shall attach to all real property of the taxpayer in the taxing unit on the same date" as the date on which the lien for taxes levied on real property attaches--"the date as of which property is to be listed." N.C.Gen.Stat. § 105-355. Because Bemis provides that "the liability for the tax arises on the day the lien attaches to the property," and the lien attaches to the property on the date of listing, the liability arises on the date of listing as well--January 1st.
 
 
 15
 Because Members Warehouse owned the property on the day of visitation, namely January 1, 1987, the said property became part of the tax base, and Members Warehouse is responsible for the property taxes assessed for the fiscal year at issue, regardless of the fact that the property was liquidated months before the tax rate was set.
 
 
 16
 Further, the state law authorizing a tax collector to attach or levy on property which he fears will be removed from the district prior to the July 1 date clearly supports such a conclusion. In the case presently before this court, the Forsyth County-Winston-Salem Tax Collector had the power to (and in fact did) file a claim against the debtor's estate prior to July 1, 1987. Although the precise amount of the claim was contingent on the tax rate set on July 1, 1987, the contingency would not have affected the tax claim's status as a "right to payment." See 11 U.S.C. § 101(4) (1988 & Supp. III 1991). As it turned out, Members Warehouse paid the property taxes prior to July 1, 1987, so the Tax Collector halted the process of attachment. Had the Tax Collector continued with his efforts, however, he would have had a right to collect the taxes.[2]
 
 III.
 
 17
 As a final point, the taxation scheme relied on by local governments in North Carolina supports the view that the listing date is the date upon which a taxpayer's obligation is incurred. It is on this listing date that the "tax base" is set. By July 1st, the local government determines how much revenue it needs to meet the expenses of local government. The local government then reviews the tax base and sets a tax rate thereon which will generate the necessary revenue. Under this scheme, the tax rate cannot be established until the tax base is known. See Spiers v. Davenport, 263 N.C. 56, 138 S.E.2d 762, 764 (1964).
 
 
 18
 If a taxpayer's obligation to pay tax does not arise until the date the tax rate is set, the purpose and legal effect of listing property on January 1st is thwarted. Under North Carolina law, on this date, a number of factors are determined as a result of the presence and ownership of property in the state. Impliedly, a taxpayer's obligation to pay tax is an additional factor that is determined on that date.
 
 IV.
 
 19
 As the discussion in this opinion indicates, the General Statutes of the State of North Carolina and case law from the Supreme Court of North Carolina clearly dictate the outcome of this case.
 
 
 20
 The pivotal event in determining when a tax is incurred is the date that the property is listed by the owner thereof, January 1st. If, after January 1st, the property decreases in value, is sold, or is moved out of the listing jurisdiction, the ownership and value of the property as of the January 1st listing date still control the tax to be paid by the listed owner when the tax rate is declared. Because the laws of the State of North Carolina provide a method for a Tax Collector to maintain control over property present within the jurisdiction subsequent to the listing date and prior to the fixation of the tax rate, this court is of the opinion that the obligation to pay ad valorem property taxes in the State of North Carolina attaches at the time the property is listed, even though the amount of the tax has not yet been determined.
 
 V.
 
 21
 Because this court has found that the Forsyth County-City of Winston-Salem and Cumberland County-City of Fayetteville Tax Collectors had a right to collect taxes from Members Warehouse (in light of the fact that the debtor's obligation to pay the taxes attached on January 1, 1987), the court need not address the issues of whether the trustee's request for repayment constituted a request for a "refund" or whether the debtor is entitled to repayment of the taxes because no "services" were rendered to the debtor.
 
 
 22
 Accordingly, the order of the district court affirming the bankruptcy court's order directing that the Tax Collectors return to the bankruptcy trustee property taxes prepaid by the debtor and denying the Tax Collector's motion to collect property taxes for the fiscal year July 1, 1987 to June 30, 1988 is therefore
 
 
 23
 REVERSED.
 
 
 
 [1]
 On January 5, 1993, a panel of this court consolidated the Forsyth County-Winston-Salem case (No. 91-1262) with the Cumberland County-Fayetteville case (No. 91-1883)
 
 
 [2]
 The trustee relies heavily on an unpublished decision of this court, Forsyth County & City of Winston-Salem Tax Collector v. Joseph W. Burns, Trustee for B & H Piggyback Service, Inc., 891 F.2d 286 (4th Cir.1989) ("Piggyback" ), to support his claim that taxes are not incurred under the North Carolina taxing scheme until the date the tax rate is set--July 1st. Piggyback, however, as an unpublished decision, has no precedential value under I.O.P. 36.5 and 36.6
 In any event, Piggyback is easily distinguished from the case presently before this court because the court in Piggyback expressly stated that if a tax collector sought to secure payment before July 1, "a different result might well have come about." To the extent that Piggyback conflicts with the reasoning of the opinion in this case, we reject its reasoning.