PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 12-3151 & 12-3152

In re: GREGORY JOSEPH MILLER;
TAMMY LYNN MILLER,
Debtors

ETTINGER AND ASSOCIATES, LLC

v.

GREGORY JOSEPH MILLER; TAMMY LYNN MILLER,
Appellants

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action Nos. 5-12-cv-00503 / 5-12-cv-00830)
District Judge:  Honorable Legrome D. Davis

Argued:  June 10, 2013

Before:  McKEE, Chief Judge,
AMBRO, and NYGAARD, Circuit Judges

(Opinion filed : September 16, 2013)

Susan J. Deely, Esquire  (**Argued**)
125 B East Broad Street
Bethlehem, PA  18018

Thomas L. Lightner, Esquire
Lightner Law Offices
4652 Hamilton Boulevard
Allentown, PA  18103

      Counsel for Appellants

Demetrios H. Tsarouhis, Esquire  (**Argued**)
Suite 200
21 South 9th Street
Allentown, PA  18102

      Counsel for Appellees

---

OPINION  OF  THE  COURT

---

AMBRO, <u>Circuit Judge</u>

In the underlying bankruptcy action, Neil Ettinger and Ettinger and Associates, LLC (jointly and severally, "Ettinger") filed an adversary complaint objecting to the discharge of legal fees owed by Tammy and Gregory Miller (the "Millers"), Ettinger's former clients and the debtors in bankruptcy. The Bankruptcy Court threw out the complaint, which asserted that the Millers' outstanding debt was

2

nondischargeable because it was obtained via fraud, and imposed a $20,000 sanction against Ettinger jointly with his bankruptcy counsel, Demetrios Tsarouhis. The District Court vacated this ruling on the ground that the sanctions order violated the procedural "safe harbor" requirements of Fed. R. Bankr. P. 9011, but it refused to remand the case for further consideration under Rule 9011 "[b]ecause it is too late to cure the safe harbor violation." Dist. Ct. Mem. Order at 22 (June 28, 2012). Moreover, because "the Bankruptcy Court based its decision to sanction on Rule 9011," the District Court would "not opine in the first instance on whether sanctions grounded in some other authority would have been appropriate." *Id.* Yet it also refused to remand to the Bankruptcy Court for that consideration. We agree with the District Court's legal conclusion on Rule 9011, but remand the case with instruction to permit the Bankruptcy Court to consider alternative avenues to impose sanctions.

## I.    BACKGROUND

The Millers retained Ettinger in January 2008 to represent them in a landlord/tenant dispute. Over a 23-month period, Ettinger ran up a bill of approximately $43,000, although the dispute was ultimately settled for $9,500. During the course of this litigation, the Millers paid Ettinger approximately $20,000 in legal fees. Even before the landlord-tenant matter had been resolved, however, Ettinger sought relief in Pennsylvania state court in an attempt to accelerate the speed at which he was being paid the outstanding amount owed—close to $23,000. He twice petitioned the court to withdraw as a counsel, first based on the Millers' alleged failure to pay (in October 2009), and then due to their professed "lack of cooperation" in the underlying dispute (in December 2009).

3

Both petitions were rejected, though the Millers were ordered to make "good faith" payments in exchange for continued representation.[1] Despite their continued payments, Ettinger sued the Millers in March 2010, asserting claims for breach of contract and *quantum meruit*. The Millers filed for Chapter 7 bankruptcy protection the following month, giving rise to these proceedings.

## A.    Bankruptcy Court Proceedings

After the Millers filed for Chapter 7 bankruptcy, Ettinger—acting through Tsarouhis—filed an adversary proceeding in the Bankruptcy Court in August 2010 in an attempt to prevent the discharge of the Millers' remaining legal debt to him.[2] In his adversary complaint, Ettinger raised

---

[1] The Millers faced mounting financial difficulties during the pendency of the landlord/tenant dispute, attributable in part to their legal debt and exacerbated by personal circumstances (*e.g.*, both were out of work due to medical conditions). Nonetheless, they complied with the court order and made regular payments to Ettinger of $100 to $200 per month.

[2] Under Fed. R. Bankr. P. 4007(a), "any creditor may file a complaint to obtain a determination of the dischargeability of any debt." Section 523 of the Bankruptcy Code lists various types of debt that may be exempted from discharge, one of which is for "services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Every objection to the discharge of a debt alleged to have been obtained by false pretenses or fraud must be brought as an "adversary proceeding," *see* Fed. R. Bankr. P. 7001(4), which litigation closely resembles a civil proceeding before a federal district court judge. These proceedings are governed by Part VII of the Federal Rules of

4

allegations of fraud and misrepresentation, though in previous proceedings he had characterized the Millers' alleged failure to pay as a purely contractual claim. The Bankruptcy Court held a trial on the adversary complaint in April 2011, immediately after which it found in favor of the Millers on the dischargeability of their debt. As outlined below, whether (and when) Ettinger and Tsarouhis may have engaged in sanctionable behavior during the litigation of the adversary complaint was a recurring issue throughout the bankruptcy proceedings.

### 1. *Initial Motion for Sanctions*

On January 31, 2011, the Millers filed and served on Ettinger and Tsarouhis a Rule 9011 Motion for Sanctions ("Initial Motion"). It asserted that Ettinger's complaint was "filed to harass and cause [them] to incur additional fees and further delay" and "for absolutely no reason other than . . . to retaliate against [them]." Millers' Mot. for Rule 9011 Sanctions ¶ 13, Jan. 31, 2011. The following day, February 1, 2011, the Millers withdrew the Initial Motion without explanation and served a copy of their withdrawal request on Ettinger and Tsarouhis.

On February 23, 2011, the Millers re-filed and re-served a motion substantively the same as their Initial Motion. The Bankruptcy Court ruled shortly thereafter that "the 9011 Motion is premature, shall be held in abeyance, and shall not be heard until after the merits of this adversary proceeding have been determined." Scheduling Order at 2, Feb. 25, 2011.

---

Bankruptcy Procedure, Fed. R. Bankr. P. 4007(e), as supplemented by the Federal Rules of Civil Procedure.

## 2.    *Litigation of Adversary Complaint*

Although not asserted in his complaint, Ettinger apparently believed that, at some time during his representation of the Millers, a bankruptcy attorney advised them they could avoid paying Ettinger's bill by filing for bankruptcy. During discovery, the Millers admitted that they had met previously with Pennsylvania bankruptcy attorney James Kutkowski; however, they indicated that they had consulted him regarding refinancing rather than bankruptcy.

Kutkowski was deposed on March 18, 2011. In his deposition, Kutkowski first indicated that he "might" have discussed bankruptcy at a meeting with Gregory Miller but that he "really truthfully [did not] remember." In response to a follow-up question, Kutkowski testified that he was "fairly confident that [he] did discuss briefly the option of bankruptcy." Kutkowski also testified at the trial on Ettinger's adversary complaint, held on April 19, 2011, at which he indicated he did not remember whether he had discussed bankruptcy at his meeting with Mr. Miller, but that "it [was] reasonable that it may have come up."

At the conclusion of the April 19 trial, the Bankruptcy Court issued a bench ruling in favor of the Millers, categorically rejecting Ettinger's claim that the Millers' prepetition debt for legal fees was nondischargeable. It recounted the twelve reasons asserted by Ettinger for nondischargeability, "none of which were accurate or correct and some of which were offensive." Following the issuance of its dischargeability ruling, the Court told the Millers to file a revised 9011 Motion.

### 3. *Amended Rule 9011 Motion*

In accord with the Bankruptcy Court's order, the Millers filed and served an amended motion for sanctions against Ettinger and Tsarouhis.[3] They responded by arguing in part that the Millers' Amended Motion did not comply with Rule 9011's "safe harbor" provision. That provision requires 21 days between serving and filing a sanctions motion, during which period the challenged conduct may be remedied.

The Bankruptcy Court granted the Amended Motion. Rejecting Ettinger and Tsarouhis' procedural argument that Rule 9011's safe harbor was violated, the Court found that the 21-day notice requirement was satisfied by the first filing (on January 31) and re-filing (on February 23) of the Millers' Initial Motion, during which period Ettinger and Tsarouhis could have taken—yet elected not to take—corrective action with respect to their sanctionable conduct.

On the merits, the Bankruptcy Court concluded that all actions taken by Ettinger and Tsarouhis after Kutkowski's March 18 deposition were sanctionable. That deposition testimony, the Court concluded, established that the Millers had not attempted to discharge fraudulently their legal fees by filing for bankruptcy protection. It described Kutkowski's deposition as the "linchpin" on which its decision turned. Because this left the complaint without factual support, the Court found that the continued prosecution by Ettinger and Tsarouhis warranted sanctions. Subsequently, it ordered them to pay an aggregate sanction of $20,000. That sum was to be

---

[3] The Millers filed a second amended motion days later, which was essentially identical to the first. We refer to these motions jointly as an "Amended Motion."

7

held in escrow pending approval of the Millers' attorneys' fees application, then be distributed between the Millers and their counsel in accord with a stipulated agreement submitted to and approved by the Court.

## B.    District Court Decision

The parties filed cross-appeals, and in June 2012 the District Court reversed the Bankruptcy Court's sanction decision on procedural grounds. The District Court concluded that the sanction could not stand because the Millers had failed to comply with the notice requirements of Rule 9011. Specifically, it found that the Millers' withdrawal and re-filing of their Initial Motion did not provide Ettinger and Tsarouhis with fair notice of the conduct claimed to violate Rule 9011, and that, even if this motion had triggered the safe harbor period, the Millers failed to wait the required number of days after service before re-filing (because service by mail added three days to the period). It also criticized the Bankruptcy Court's reliance on conduct that was raised for the first time in the Amended Motion, which was filed after trial and thus too late for Ettinger and Tsarouhis to cure the offensive conduct.

Because curing the safe harbor violation was no longer possible (*i.e.*, it was impossible to provide Ettinger and Tsarouhis 21 days during which they might correct the sanctionable conduct), the District Court refused to remand the issue to the Bankruptcy Court for further proceedings. While it noted there were several other mechanisms by which the Bankruptcy Court could have sanctioned Ettinger and Tsarouhis, the District Court refused to consider the appropriateness of sanctions under any of those alternative options in light of the Bankruptcy Court's sole reliance on Rule 9011. Apparently for that reason, a remand to consider those options was refused.

8

## II.    JURISDICTION & STANDARD OF REVIEW

The Bankruptcy Court had jurisdiction over the initial proceedings under 28 U.S.C. § 1334.  The District Court exercised jurisdiction to review the bankruptcy appeal pursuant to 28 U.S.C. § 158(a).  We have appellate jurisdiction to review the District Court's ruling under 28 U.S.C. §§ 158(d) and 1291.

"We exercise plenary review over the District Court's appellate review of the Bankruptcy Court's decision and exercise the same standard of review as the District Court in reviewing the Bankruptcy Court's determinations." *Schubert v. Lucent Techs. Inc.* (*In re Winstar Commc'ns, Inc.*), 554 F.3d 382, 389 n.3 (3d Cir. 2009) (citing *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995) [hereinafter "*FE&B*"]).  "[W]e review a bankruptcy court's 'legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof.'" *In re Michael*, 699 F.3d 305, 308 n.2 (3d Cir. 2012) (quoting *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 816 (3d Cir. 2010)).

The imposition or denial of sanctions is subject to abuse-of-discretion review. *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir. 1988) (citing *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3d Cir. 1987)).  A court considering and imposing sanctions must "articulate sufficient reasons for its determination of what is the appropriate sanction to apply," and "provide a sufficient basis for reviewing its exercise of discretion." *Stuebben v. Gioioso* (*In re Gioioso*), 979 F.2d 956, 961 (3d Cir. 1992)).  Absent record support for imposing sanctions, remand to the bankruptcy court is appropriate. *See, e.g.*, *DeLauro v. Porto* (*In re Porto*), 645 F.3d 1294, 1306 (11th Cir. 2011) ("[W]e must remand this case to the bankruptcy court so that it can

either flesh out its reasons for sanctioning [the party] or decide that he is not to be sanctioned."); *see also In re Gioioso*, 979 F.2d at 961 (citing cases).

## III.    ANALYSIS

On appeal, the Millers challenge the District Court's procedural dismissal on the ground that they "substantially complied" with Rule 9011's safe harbor requirements. Specifically, they argue that the Initial Motion was sufficient to put Ettinger and Tsarouhis on notice of the allegedly sanctionable conduct, and that the District Court erroneously included three additional days, based on service by mail, when computing the safe harbor period. The Millers also assert that the District Court erred in concluding they could not recover for behavior occurring after filing their Initial Motion. In the alternative, the Millers assert that, even assuming Rule 9011's procedural prerequisites were not met, the District Court should have remanded because there are other means by which the Bankruptcy Court could properly impose sanctions.

### A.    <u>Rule 9011 Overview</u>

Rule 9011 requires, *inter alia*, that attorneys' submissions to the court not be "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," that legal assertions be "warranted by existing law," and that "factual contentions have evidentiary support." Fed. R. Bankr. P. 9011(b). If any of these requirements is violated, a court has the discretion—"after notice and a reasonable opportunity to respond"—to impose sanctions, which may be initiated by motion or *sua sponte* by the court. *Id.* 9011(c).

Rule 9011's safe harbor provides that, if a party is moving for sanctions, the "motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." *Id.* 9011(c)(1)(A). Only after this 21-day "safe harbor" period may the moving party file its motion with the court. *Id.*

"The purpose of the safe harbor is to give parties the opportunity to correct their errors, with the practical effect being that 'a party cannot delay serving its Rule [90]11 motion . . . until conclusion of the case (or judicial rejection of the offending contention).'" *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008) (quoting Fed. R. Civ. P. 11 advisory committee's notes (1993 amendments) [hereinafter "Rule 11 Advisory Notes"]).[4] As the Tenth Circuit Court explained:

> The safe harbor provisions were intended to "protect litigants from sanctions whenever possible in order to mitigate Rule [90]11's chilling effects, formalize procedural due process considerations such as notice for the protection of the party accused of sanctionable behavior, and encourage the withdrawal of papers that violate the rule without involving the . . . court."

---

[4] "Bankruptcy Rule 9011 is the equivalent sanctions rule" to Rule 11 of the Federal Rules of Civil Procedure, *Landon v. Hunt*, 977 F.2d 829, 833 n.3 (3d Cir. 1992), and "cases decided pursuant to [Rule 11 also] apply to Rule 9011,'" *In re Gioioso*, 979 F.2d at 960.

*Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1337.2 (3d ed. 2004)).

## B.     Compliance with Safe Harbor Requirements

As an initial matter, we address the technical prerequisites for satisfaction of Rule 9011's procedural safe harbor provision. The District Court concluded correctly that strict compliance with the safe harbor rule is required. As we explained in *Schaefer Salt*, "[i]f the twenty-one day period is not provided, the motion must be denied." 542 F.3d at 99.[5] Rule 9011 "imposes mandatory obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements precludes the imposition of the requested sanctions." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004) (en banc).

We note, as did the District Court, that there is a split of authority regarding whether re-filing an initially

---

[5] The Millers argue our more recent decisions indicate that "substantial compliance" with the safe harbor is sufficient, citing *In re Mondelli*, 508 F. App'x 131 (3d Cir. 2012). Not only is this a not precedential opinion on which reliance for legal rulings is unavailing, *Mondelli* is distinguishable, as it involved not the period of the safe harbor but rather the form of notice—*i.e.*, a "notification letter" sent in lieu of formal service of the Rule 9011 motion. *Id.* at 135. Moreover, several courts of appeals have disagreed with the proposition that such notification letters may satisfy the safe harbor's procedural requirements. *See, e.g., Roth*, 466 F.3d at 1192; *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998); *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997).

noncompliant Rule 9011 motion after 21 days provides fair notice for such sanctions. *Compare Tahfs v. Proctor*, 316 F.3d 584, 589 (6th Cir. 2003) (suggesting re-filing may cure previous safe harbor noncompliance), *Jefferson v. Mass. Mut. Life Ins. Co.*, No. 3:07-0715, 2008 WL 4724326, at *6 (M.D. Tenn. Oct. 24, 2008) (same), *and Muhammad v. Louisiana*, Nos. 99-3742/2694, 2000 WL 1876350, at *2–3 (E.D. La. Dec. 21, 2000) (same), *with In re New River Dry Dock, Inc.*, 461 B.R. 642, 646 (Bankr. S.D. Fla. 2011) (rejecting reliance on premature filing to satisfy safe harbor), *and Xiangyuan Zhu v. Fed. Hous. Fin. Bd.*, No. 04-2539-KHV, 2007 WL 675646, at *4 (D. Kan. Mar. 1, 2007) (same). The District Court sided with the courts that have found this type of withdrawal-and-refiling fails to satisfy Rule 9011's safe harbor. We need not resolve this issue, however, because even if the Millers' Initial Motion started the safe harbor clock, they nonetheless failed to wait the requisite period before re-filing.

Here, the Millers filed and served the Initial Motion on January 31, 2011, making 21 days from service February 21, 2011. However, because February 21 was a federal holiday, the safe harbor was extended until the following day (February 22), *see* Fed. R. Bankr. P. 9006(a)(1)(C), (a)(6)(A). The Millers served their motion for sanctions by mail in accord with the Bankruptcy Court's rules of procedure. *See id.* 9011(c)(1)(A) (indicating sanctions motions must comply with Fed. R. Bankr. P. 7004's service requirements); *id.* 7004(b) (requiring service by mail). When computing time for service by mail, three additional days are added after the prescribed period would otherwise expire. *Id.* 9006(f). Adding three days extended the safe harbor period to February 25, meaning the earliest the Millers could have re-filed in compliance with Rule 9011's notice requirements was February 26, 2011. Because they re-filed on February 23—days before the safe harbor period had expired—their Initial

13

Motion was procedurally defective, and any sanction based thereon was invalid.[6]

The Millers argue the additional three days for mail service should not be added to the 21-day period because they served Ettinger and Tsarouhis electronically as well as by mail. They rely solely on the Eastern District of Pennsylvania's local rules, however, and do not cite any authority indicating these rules trump the Bankruptcy Court's rules of procedure. Absent such support, we agree with the computation of time made by the District Court (which is surely familiar with its local rules) of the safe harbor period.

### C.      Sanctioning Post-Motion Conduct

The District Court also found another procedural problem with the sanctions imposed, this time regarding due process notice requirements. In particular, the Court expressed concern because the sanctions were based on facts additional to and different from those in the Initial Motion, yet the Millers' Amended Motion, standing alone, undisputedly did not comply with the safe harbor provision. *See* Dist. Ct. Mem. Order at 18 (noting "the Bankruptcy Court sanctioned Ettinger and Tsarouhis for conduct that had not even occurred at the time the Millers filed and served their initial Rule 9011 motions, but allowed the Millers to rely on these motions to satisfy the safe harbor [notice] requirement"). And by the time the Millers filed their Amended Motion, Ettinger and Tsarouhis had already lost at trial on their adversary proceeding, and thus lost as well the chance to rectify their offending conduct.

---

[6] *See also* Dist. Ct. Mem. Order at 15–17 (finding the Millers' premature re-filing an "additional and independent reason" for vacating the sanctions order).

Permitting a court to sanction a party for conduct occurring after the service and filing of a Rule 9011 motion is contrary to our recognition that "[d]ue process in the imposition of Rule 9011 sanctions requires 'particularized notice.'" *In re Taylor*, 655 F.3d 274, 286 (3d Cir. 2011) (quoting *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir.1990)). "Particularized notice" sufficient to comport with due process is provided where "a party is on notice as to the particular factors that he must address if he is to avoid sanctions." *Jones*, 899 F.2d at 1357; *see also Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994) (identifying three prerequisites of adequate notice as "1) the fact that Rule [90]11 sanctions are under consideration, 2) the reasons why sanctions are under consideration, and 3) the form of sanctions under consideration" (citation omitted)).

In addition, the purpose of Rule 9011 would not be advanced if a party could be sanctioned without ever having the opportunity to correct the offending behavior. *See, e.g., Schaefer Salt*, 542 F.3d at 99. Thus, "'a party cannot delay serving its Rule [90]11 motion . . . until conclusion of the case (or judicial rejection of the offending contention),'" *id.* (quoting Rule 11 Advisory Committee Notes), as it would effectively be too late to withdraw or correct the offending act(s). To conclude otherwise would allow a party seeking sanctions to deprive the target of the opportunity to escape them by withdrawal or correction, a crucial component of Rule 9011.

15

## D.     Other Available Sanctioning Tools

Aside from Rule 9011, however, there are various sources of authority by which bankruptcy courts may impose sanctions. The District Court identified some of these sanctioning tools, including "(1) on the Court's own initiative pursuant to Rule 9011(c)(1)(B); (2) using the Court's inherent power to sanction; or (3) under 11 U.S.C. § 105." Dist. Ct. Mem. Order at 20; *see also* 28 U.S.C. § 1927 (permitting courts to award costs against attorneys who "unreasonably and vexatiously" multiply proceedings). Notwithstanding its recognition of other avenues by which sanctions could have been imposed in this case—none of which contains a safe harbor timing provision, *see, e.g.*, *Brickwood Contractors, Inc.*, 369 F.3d at 389 n.2—the District Court refused to decide "in the first instance . . . whether sanctions grounded in some other authority would have been appropriate." Dist. Ct. Mem. Order at 22. It did so apparently because "the Bankruptcy Court based its decision to sanction on Rule 9011" solely. *Id.*

Not taking the next step—to remand for "first instance" review—is where the District Court came up short. Because the aforementioned grounds for sanctions do not require compliance with any safe harbor provision, we conclude it erred by refusing to remand to allow the Bankruptcy Court to consider imposing sanctions a different way. Sanctions may be upheld, notwithstanding a safe harbor violation, if they are "clearly valid" under a different sanctioning mechanism. *See Ginsberg v. Evergreen Sec., Ltd.* (*In re Evergreen Sec., Ltd.*), 570 F.3d 1257, 1273 (11th Cir. 2009). Remand is necessary, however, to satisfy the due

16

process requirements of adequate notice and an opportunity to respond before considering these alternate approaches.[7]

## IV.   CONCLUSION

We agree with the District Court that the sanctions order issued by the Bankruptcy Court pursuant to Rule 9011(c)(1)(A) was procedurally defective, and therefore must be vacated.  The Millers failed to wait the required days between serving and filing their Initial Motion, and they provided no advance notice with respect to the additional claims within their Amended Motion.  Further, Rule 9011 was an improper provision to penalize conduct that occurred well after the Millers initially moved for sanctions against Ettinger and Tsarouhis.

However, because there are various sanctioning tools available that are unaffected by this procedural problem, we conclude remand is the proper course to allow the Bankruptcy Court to consider those options.  Thus we vacate the District Court's order, and remand the case with instruction to remand to the Bankruptcy Court for proceedings consistent with this opinion.

---

[7] While our dissenting colleague believes that remand is inappropriate because the Bankruptcy Court considered yet chose not to use other sanctioning tools, we find no indication in the record that those other avenues were considered meaningfully.  And because our reading of the record as a whole makes clear that the Court believed sanctions were warranted in this case, we conclude remand is the proper course.

McKEE, *Chief Judge*, concurring.

I agree that the sanctions order issued by the Bankruptcy Court pursuant to Rule 9011(c)(1)(A) was procedurally defective and therefore must be vacated. I also agree that a remand is appropriate to allow the Millers to pursue alternative avenues of securing sanctions against Ettinger. In joining Judge Ambro's opinion, I do not suggest that a party should always be afforded the luxury of a "second bite of the apple" when failure to adhere to the procedural requirements of Rule 9011(c)(1)(A) negates the subsequent imposition of sanctions. However, I believe that a remand is required here because of Ettinger's egregious conduct toward these clients.

The Millers paid Ettinger almost $20,000 towards his $43,000 bill and they were continuing to make good faith payments to him of $100 to $200 per month pursuant to a state court order. However, the Millers had fallen upon hard times and were struggling to keep their heads above water. Despite the financial hardship the Millers were facing, and despite the monthly payments they were making, Ettinger thought it appropriate to file an adversarial complaint against his clients in their bankruptcy preceding. He thus thought it appropriate to attempt to ensure that his clients' debt to him would survive the "fresh start" that is the underlying purpose of bankruptcy. Not surprisingly, the Bankruptcy Court concluded that Ettinger's conduct required the sanctions that the court imposed.

I see no reason in law or equity to allow such conduct to escape sanction merely because of a counting error that arose from the fortuitous interposition of a three day weekend. Accordingly, I agree that Ettinger's conduct justifies a remand so that the Bankruptcy court can decide whether to adopt an alternative mechanism for imposing sanctions.

1

NYGAARD, *Circuit Judge,* dissenting in part.

I agree with most of the majority opinion, but come to a different conclusion on remanding. I would not order the District Court to send this cause back to the Bankruptcy Court and, therefore, dissent in part.

In ordering the remand, with instructions that the bankruptcy judge consider other available sanctions, the majority disregards the fact that the judge did consider such avenues and rejected them. Put another way, despite a panoply of options available to him, the bankruptcy judge chose to limit his choice to Rule 9011. I would hold him to that decision. Note the record: after citing the "critical language" of Rule 9011(c) (limiting sanctions "to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated") the judge explained that the sanctions he imposed were not a question of fee shifting or repaying the debtors, but instead satisfied his "primary goal" of deterring other practitioners from undertaking the conduct he found so objectionable in the Appellees. Appendix at 160-161. When asked by Appellant's counsel whether there were any additional sanctions to be had besides the $20,000.00 awarded under Rule 9011, the bankruptcy judge's response was clear: "No. So, it's $20,000.00. That's the sanction. That's it." Appendix at 161. The bankruptcy judge rejected other avenues for sanctions available to him and, indeed, his citation to 11 U.S.C. § 105(a) in his subsequent order evinces knowledge of other vehicles for imposing sanctions. I also note that the Appellants themselves failed to explore or request sanctions through other means.

1

Contrary to this, however, my colleagues order the remand and come perilously close to expressing a position that sanctions should be awarded under different statutes, when, to my reading, the bankruptcy judge already rejected those avenues.  I can make no other assumption than that my colleagues believe some other type of sanctions are required here.  That however, is not our call nor is that issue before us.  I would affirm the District Court in all aspects.