**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2768
_____

In re: JOON HYUN PARK,
Debtor


CHUNG CHO,
Appellant

v.

JOON HYUN PARK
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. Nos. 2-14-cv-07613 & 2-15-cv-01045)
District Judge: Hon. Madeline Cox Arleo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 24, 2016
_____

Before: VANASKIE, KRAUSE, and NYGAARD, *Circuit Judges*.

(Opinion Filed: March 16, 2017)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Chung Cho seeks review of two orders entered during the Chapter 7 Bankruptcy case of Joon Hyun Park. First, on December 1, 2014, the Bankruptcy Court approved a settlement of a fraudulent transfer action between the Bankruptcy Estate and two parties: Cho's sister (Ryung Hee Cho), and Seventh Avenue Fine Foods Corp., d/b/a "Smiler's Deli," the effect of which was to effectively moot a fraudulent transfer lawsuit filed by Cho in the United States District Court for the Southern District of New York. And second, on January 20, 2015, the Bankruptcy Court denied Cho's motion to strike Park's answer to Cho's adversary complaint and motion for sanctions stemming from the conduct of Park's counsel at Park's deposition. The District Court affirmed both orders in a decision dated June 30, 2015, and Cho appealed the District Court's ruling to our Court. For the reasons that follow, we will affirm.

I.

In 2001, Park purchased a residence from Cho for $665,000. According to Cho, Park obtained a mortgage for $450,000 and tendered a check for the difference. Park, however, asked Cho not to cash the check for a period of time. Cho completed the transfer of the residence while awaiting the remaining balance. Park subsequently closed the account on which the check to Cho had been drawn without depositing any money, leaving the remaining balance unpaid.

At the time of the purchase of the residence, Park worked for Cho's sister at Smiler's Deli. Shortly after he purchased the residence from Cho, Park and his wife

2

bought Smiler's Deli for $2 million, payable in monthly installments of $20,000 to $30,000.

Approximately ten years after the purchase of the residence, Park and Cho entered into binding arbitration over the unpaid balance. In December of 2010, the arbitrator found in favor of Cho. The arbitration award was confirmed the New Jersey Superior Court.

Shortly after the arbitration proceeding, Cho learned that Park had transferred Smiler's Deli back to Cho's sister because the business had allegedly been failing. Unable to collect on the arbitration award, Cho commenced a fraudulent transfer action in the United States District Court for the Southern District of New York against Park, Park's wife, Smiler's Deli, and his sister. Cho alleged that the Parks' purchase of the deli was designed to allow Park to siphon money from the business while shielding his assets from Cho.

In July of 2011, while the fraudulent transfer action was pending, Park filed a Chapter 13 bankruptcy petition in the Bankruptcy Court for District of New Jersey. Pursuant to a reorganization plan approved by the Bankruptcy Court, Park was to satisfy his debt to Cho over a period of five years. When Park defaulted on his payments, the Bankruptcy Court, in June of 2012, dismissed Park's Chapter 13 petition.

On November 1, 2013, Park filed a Chapter 7 petition in the Bankruptcy Court for the District of New Jersey. His petition referenced the debt to Cho in the schedule of creditors holding unsecured non-priority claims.[1]

The Chapter 7 Trustee asserted preferential or fraudulent transfer claims against Cho's sister and Smiler's Deli. On March 10, 2014, over Cho's objection, the Southern District of New York stayed Cho's action pending in that court. On October 9, 2014, the Trustee filed a notice of settlement of the fraudulent transfer claims. The settlement provided that Cho's sister and Smiler's Deli would pay the Trustee $25,000 in settlement of any claims the Trustee and the Bankruptcy Estate had against them. Cho objected to the settlement and moved in the Bankruptcy Court to lift the stay of the Southern District of New York action. On December 1, 2014, the Bankruptcy Court approved the settlement after a hearing. Cho then appealed this order to the District Court. After filing his appeal to the District Court, Cho moved for reconsideration in the Bankruptcy Court, arguing that he had discovered proof of funds that had been siphoned from Smiler's Deli to another entity. After another hearing, the Bankruptcy Court found that Cho's appeal divested it of jurisdiction to address the motion. The Bankruptcy Court noted, however, that it would not have granted the motion on the merits given that the evidence submitted

---

[1] On January 30, 2014, Cho filed an adversary proceeding in the Bankruptcy Court objecting to the discharge of Park's indebtedness to him because of Park's allegedly fraudulent operation of Smiler's Deli. The Bankruptcy Court granted summary judgment in favor of Park in this adversary proceeding, and the District Court affirmed the summary judgment ruling. Cho appealed this decision to our Court, docketed to No. 16-1409, and we recently affirmed the grant of summary judgment in favor of Park.

could not be considered "new." (App. 836.) Cho appealed this decision to the District Court as well. At the same time, Cho, citing the conduct of Park's counsel at Park's deposition, sought to impose sanctions and to strike Park's answer to Cho's adversary complaint. On January 20, 2015, the Bankruptcy Court denied Cho's sanctions motions. Cho appealed this third order to the District Court.

In reviewing the Bankruptcy Court orders, the District Court held that the Bankruptcy Court: (1) did not abuse its discretion in approving the settlement; (2) properly found a lack of jurisdiction to adjudicate the motion for reconsideration; and (3) did not abuse its discretion in denying the motion for sanctions and the motion to strike Park's pleadings. Cho filed this timely appeal.[2]

## II.

The Bankruptcy Court had jurisdiction over the initial proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334. The District Court had jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a). We have appellate jurisdiction to review the District Court's ruling under 28 U.S.C. §§ 158(d) and 1291. "We exercise plenary review over the District Court's appellate review of the Bankruptcy Court's decision and exercise the same standard of review as the District Court in reviewing the Bankruptcy Court's determinations." *In re Miller*, 730 F.3d 198, 203 (3d Cir. 2013). "We review a bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and

---

[2] Cho does not challenge in this Court the District Court's decision that affirmed the Bankruptcy Court's denial of his reconsideration motion.

5

its exercises of discretion for abuse thereof." *Id*. A bankruptcy court exercises discretion both in its imposition or denial of sanctions and in its approval or disapproval of a settlement. *Id.* at 203; *In re Martin*, 91 F.3d 389, 391 (3d Cir. 1996).

III.

We first examine the Bankruptcy Court's order approving the Chapter 7 Trustee's settlement with Cho's sister and Smiler's Deli. On motion by a trustee, bankruptcy courts have the authority to approve a settlement that is "fair and equitable" after notice and a hearing. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *see* Fed. R. Bankr. P. 9019. In determining whether a settlement is fair and equitable, a bankruptcy court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393. This Court has identified four factors to consider when attempting to accomplish this balance: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id*.

The Bankruptcy Court addressed the *Martin* factors directly at the settlement hearing and found the settlement to be fair and equitable. The Bankruptcy Court noted that—with respect to the underlying fraudulent transfer claims—even if the statute of limitations did not bar recovery entirely, the likelihood of success was at best uncertain. The Bankruptcy Court also recognized the factual complexity of the case and the costs

6

that would accompany the litigation, including the need for a forensic accountant. The Bankruptcy Court therefore concluded that the settlement offer was superior to what could be achieved through continued litigation on the claim and ultimately in the paramount interest of the creditors. We agree with the District Court that the Bankruptcy Court did not abuse its discretion in its application of the *Martin* factors or its approval of the proposed settlement.

Cho also contends that the Bankruptcy Court should have modified the automatic stay of the fraudulent transfer action to allow him to pursue that claim in the Southern District of New York. The Bankruptcy Court, however, found that this claim was part of the estate and within the sole authority and duty of the trustee to administer. In this regard a bankruptcy "estate" encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This broad definition of a bankruptcy estate includes causes of action that arise out of preferential or fraudulent transfers. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10 (1983). Park's bankruptcy estate clearly included the fraudulent transfer claims against Cho's sister and Smiler's Deli. Under these circumstances, the Bankruptcy Trustee plainly had standing to pursue the claims against Cho's sister and Smiler's Deli, and Cho's action in the Southern District of New York was properly stayed. *See In re Keene Corp.*, 164 B.R. 844, 850 (Bankr. S.D.N.Y. 1994) ("[A] third party action to recover fraudulently transferred property is properly regarded as undertaken to recover a claim

7

against the debtor and subject to the automatic stay pursuant to § 362(a)(1).") (internal quotation marks and citation omitted).[3]

Finally, Cho appeals the denial of his motion for sanctions and his motion to strike Park's entire answer to Cho's adversary complaint. Cho moved for sanctions and moved to strike based on the conduct of Park's counsel at Park's deposition. Cho states that Park's counsel objected 75 times during the one-hour deposition, that counsel used aggressive and disruptive language, and that he ultimately walked out before the deposition had concluded. After a hearing on the matter, the Bankruptcy Court found that sanctions, including striking the answer, should not be imposed. The Bankruptcy Court concluded that striking the answer was too severe, especially considering the fact that the conduct complained of was that of Park's counsel and not Park himself. The Bankruptcy Court also determined that sanctions were inappropriate given that Park had no history of delays or bad faith and because Park had agreed to proceed with the deposition. The District Court concluded that the Bankruptcy Court neither abused its discretion nor erred in its factual determinations in deciding these motions. Once again, we agree.

IV.

---

[3] Once the settlement was approved, the District Court for the Southern District of New York dismissed Cho's fraudulent transfer action as precluded by the doctrine of *res judicata*. *Cho v. Seventh Ave. Fine Foods Corp.*, No. 11 CIV. 3436 (KPF), 2016 WL 1717214 (S.D.N.Y. Apr. 28, 2016). Cho did not pursue an appeal of the Southern District decision.

For the foregoing reasons we will affirm the District Court's order of June 30, 2015.